IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

A.L.,

    Plaintiff,

v.                                      No. 23-cv-127-WJ-SCY

LEON MARTIN, in his individual capacity,
and THE STATE OF NEW MEXICO,

    Defendants.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT II

**THIS MATTER** is before the Court on Defendants' Motion for Partial Summary Judgment on Count II (**Doc. 30**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is not well-taken and, therefore, is **DENIED**.

### BACKGROUND

This case arises out of the alleged rape, assault, battery, false imprisonment, and false arrest of A.L. by Defendant Leon Martin on or about November 21, 2021. At the time, Defendant Martin was an "employee of the Isleta Pueblo Police and licensed peace officer commissioned with the State of New Mexico." **Doc. 1-2 at ¶ 2**.

On January 9, 2023, Plaintiff filed a Complaint (**Doc. 1-2**) in the Second Judicial District Court, County of Bernalillo, New Mexico, asserting federal civil rights and state law tort claims against Defendants. Defendants removed the case to federal court on February 10, 2023. **Doc. 1**.

Plaintiff alleges that Defendant State is responsible for Defendant Martin's conduct pursuant to NMSA 1978 § 41-4A-3 (2023). **Doc. 1-2 at ¶ 39**. Defendants[1] assert they are entitled

---

[1] The Court notes that the Eleventh Amendment generally "bars lawsuits in federal court seeking damages against

to summary judgment on Count II—alleging a violation of the New Mexico Civil Rights Act ("NMCRA")—on the grounds that it violates the Contracts Clause of the Constitution. U.S. Const. art. 1, § 10, cl. 1.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party shows that "no genuine dispute" exists about any "material fact." Fed. R. Civ. P. 56; *see also Chase Mfg. v. Johns Manville Corp.*, 79 F.4th 1185, 1195 (10th Cir. 2023). After the movant demonstrates "the absence of a genuine issue of material fact," the burden shift to "the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat summary judgment, the nonmovant must set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmovant. *N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1171–72 (10th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In reviewing a motion for summary judgment, the Court "construe[s] the facts in the light most favorable to the nonmovant and . . . draw[s] all reasonable inferences in its favor." *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023).

## UNDISPUTED MATERIAL FACTS

Relevant here is the fact Defendant State and the Pueblo of Isleta ("Isleta") entered into a contract ("Agreement") on April 21, 1994. **Doc. 30-2; UMF ¶ 3**. The Agreement outlined the

---

states as well as against state agencies, departments, and employees acting in their official capacity." *Bishop v. John Doe 1*, 902 F.2d 809, 810 (10th Cir. 1990) (citing U.S. Const. amend XI). Ordinarily, a plaintiff cannot bring a NMCRA lawsuit in federal court since 28 U.S.C. § 1367 "does not authorize federal district courts to exercise jurisdiction over claims against nonconsenting states." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 542 (2002). But here, Defendant State has not invoked its Eleventh Amendment immunity—constituting a waiver whereby this Court can exercise supplemental jurisdiction over their NMCRA claims.

terms, conditions, and procedures for issuance and revocation of New Mexico peace officer commissions by the NMSP Chief to Isleta. **Doc. 30-2 at §§ 1–4**. The Agreement also contains an indemnification provision, a status provision, and an amendments provision. **Id. at §§ 6, 7, and 11**. The terms of these three sections explain that the Pueblo: (1) will indemnify the State for any claim that may arise out of the actions of a peace officer commissioned pursuant to the Agreement; (2) that the Pueblo's peace officers are "not employees of the State of New Mexico," but instead are independent contractors; and (3) no modifications to the Agreement are allowed without the consent of the NMSP Chief and the authorized officials of the Pueblo of Isleta. *Id*.

Plaintiff disputes UMF ¶ 4 insofar as it asserts Defendant Martin was not an employee of the State. **Doc. 32 at 3**. Defendant State relies upon Section 7 of the Agreement that states: "[P]eace officers commissioned pursuant to this Agreement [] are not employees of the State of New Mexico." **Doc. 30-2 at § 7**. Such peace officers act as "independent contractors." *Id*. On this issue, there is no genuine dispute of material fact[2].

There is, however, a genuine dispute over UMF ¶ 5. Defendant State asserts that Section 7 of the Agreement demonstrates the State assumes no liability for Isleta's actions. **Doc. 30 at 5; Doc. 30-2 at § 7**. At the same time, Plaintiff asserts other sections of the Agreement contradict the provisions of Section 7. **Doc. 32 at 2, 4, and 6–7; Doc. 30-2 at §§ 1, 4, and 6–7**.

Pursuant to this Agreement, on February 23, 2021, the Chief of NMSP issued a New Mexico peace officer commission to Defendant Martin. **UMF ¶ 6**. On November 29, 2021, the Chief of the Police from Isleta sent a letter explaining Defendant Martin resigned on November

---

[2] The dispute over UMF ¶ 4 (regarding whether Defendant Martin was an independent contractor or employee of the State) is a legal question, not a factual one. *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (considering and rejecting employer's characterization of rig welders as independent contractors despite parties signing "Agreement with Independent contractor"); *Dole v. Snell*, 845 F.2d 802, 804 (10th Cir. 1989) ("Courts are not limited by any contractual terminology used by the parties or by the traditional common law concepts of 'employee' or 'independent contractor.'").

25, 2021. **Doc. 30-4**. The reasons for the resignation and revocation of Defendant Martin's commission are clear.

At the summary judgment stage, "facts must be viewed in the light most favorable to the nonmoving party." *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013). The standard for summary judgment is a high bar for the moving party to clear. The Court finds that Defendant has not cleared this hurdle because there is a genuine dispute of material fact concerning the degree (if any) to which the NMCRA violates the obligations of the Agreement.

## DISCUSSION

### I. The NMCRA Does Not Substantially Impair the Agreement

As of July 1, 2021, the NMCRA (codified at NMSA 1978, § 41-4A-1 through 41-4A-13) creates a cause of action for violations of "rights, privileges or immunities" secured pursuant to the bill of rights of the constitution of New Mexico. *See* NMSA 1978 §§ 41-4A-3 & 41-4A-12 (2023). Relevant to the allegations in the Complaint (**Doc. 1-2**), Article 2, Section 10 of the New Mexico Constitution prohibits excessive force and unreasonable search and seizure. The NMCRA provides that public bodies "shall be held liable for conduct of individuals acting on behalf of, under color of or within the course and scope of the authority of the public body." NMSA 1978 § 41-4A-3(C) (2023).

The fact that Defendant Martin worked for the Pueblo of Isleta does not mean Plaintiff cannot—as a matter of law—sustain a claim against Defendant State for Defendant Martin's actions while on duty as a commissioned officer for the State of New Mexico. *See e.g., Loya v. Gutierrez*, 2015-NMSC-017, ¶ 11, 350 P.3d 1155 (N.M. 2015) (concluding tribal officer commissioned as county sheriff qualified as a "public employee" under NMTCA thus requiring the State to defend and indemnify him). In *Loya*, the New Mexico Supreme Court held that a

governmental entity (such as Defendant State) cannot seek to keep the benefit of allowing tribal police officers to enhance law enforcement and improve public safety, at little cost to the State, "while denying any responsibility for the risks arising from its creation—namely actions taken by volunteer deputies who are sued while acting on the [State's] behalf." *Loya*, 2015-NMSC-017 at ¶ 35. To determine Defendant State assumes no liability is contrary to public policy and the NMCRA. *See Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 9, 133 N.M. 661, 68 P.3d 901 (N.M. 2003).

Defendant State may be liable under the principle of *respondeat superior* or the aided-in-agency theory. *See Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1256 (10th Cir. 2020) ("[E]ven when the agent's tortious act was not within the scope of the agent's actual authority, the principal may be liable under the doctrine of *respondeat superior* if the principal is the employer of the agent-employee and the tortious conduct was committed by the employee acting within the scope of employment."); *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 30, 135 N.M. 539, 91 P.3d 58 (N.M. 2004) ("[A]n employer may be held liable for the intentional torts of an employee acting outside the scope of his or her employment if the employee 'was aided in accomplishing the tort by the existence of the agency relation [between the employer and employee].").

The fact that the Agreement says Defendant Martin was an independent contractor of the New Mexico State Police ("NMSP"), and not an employee, is irrelevant to the question whether Martin was acting "on behalf of, under color of or within the course and scope of the authority" of a NMSP officer. Even if the Court determined[3] that Defendant Martin was an independent

---

[3] The Court makes clear that this ruling does not decide whether Defendant Martin was, in fact, an independent contractor or employee. *See supra* n.2. Likewise, the Court is not imputing liability to Defendant State. This Memorandum Opinion and Order only decides that the nonmovant (Plaintiff) has set forth specific admissible facts from which a rational trier of fact could find for them.

contractor, that alone does not change the Court's conclusion that Martin undertook the arrest of Plaintiff while in his official capacity.

## II. Contractual Two-Step and Legislative Deference

Defendant State contends that the NMCRA unconstitutionally impairs the obligation of their Agreement with Isleta. Plaintiff counters that the NMCRA does not impair the contract, and even if it did, the imposition is a legitimate exercise of the State's police power. Plaintiff's argument is persuasive.

"[T]he Contract Clause limits the power of the States to modify their own contracts as well as to regulate those between private parties." *U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 17 (1977). Article I, Section 10, Clause 1 of the Constitution states:

> No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, *or Law impairing the Obligation of Contracts*, or grant any Title of Nobility.

(emphasis added). Courts apply a two-step test to determine whether a state law violates the Contracts Clause. "The threshold issue is whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). "In answering that question, the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id*. at 1822. "Minimal alteration of contractual obligations may end the inquiry at its first stage." *Allied*, 438 U.S. at 245. When a law substantially impairs a contract, "the State, in justification, must have a significant and legitimate public purpose behind the law, such as the remedying of a broad and general social or economic problem." *Stillman v. Tchrs. Ins. &*

*Annuity Ass'n Coll. Ret. Equities Fund*, 343 F.3d 1311, 1321 (10th Cir. 2003) (cleaned up). Specifically, a court will ask "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance a significant and legitimate public purpose." *Sveen*, 138 S. Ct. at 1822 (quoting *Energy Reserves Grp. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–12 (1983)).

The bargained-for purpose of the Agreement was to allow the NMSP to issue peace officer commissions to tribal officers employed by Isleta. **Doc. 30-2 at § 1**. Nothing in the NMCRA frustrates or nullifies this right. To the extent the NMCRA expands liability to Defendant State that was unanticipated in 1994, the Agreement already contains an indemnification clause. **Doc. 30-2 at § 7**. This provision demonstrates that neither Defendant State nor non-party Isleta reasonably anticipated escaping liability in all circumstances. Finally, the Agreement contains a choice-of-law provision. **Doc. 30-2 at § 11**. Because the parties agreed the "laws of the State of New Mexico" shall govern the Agreement—it is nonsensical for the State to argue the NMCRA undermines the Agreement.

"[S]tate regulation is permissible under the Contract Clause notwithstanding its incidental effect on pre-existing contracts." *Exxon Corp. v. Eagerton*, 462 U.S. 176, 194 (1983). When a state actor is a party to a contract at issue, typically courts have determined such legislation is subject to "stricter scrutiny." *United Steel*, 842 F.3d at 212. But that conclusion flows from a presumption that the State is attempting to "reduce its financial obligations"—which would mean "the Contract Clause would provide no protection at all." *U.S. Tr. Co. of N.Y.*, 431 U.S. at 26. Here, of course, the State has increased its financial obligations and liability. Accordingly, deference is owed to the legislature's determination.

Here, the State legislature's determination that increased governmental accountability was required under the NMCRA is owed significant deference. The NMCRA furthers "significant and

legitimate public purpose[s] . . . such as the remedying of a broad and general social or economic problem." *Stillman*, 343 F.3d at 1321. Quite clearly the NMCRA is a major change in the law; but it is not a "substantial impairment of a contractual relationship." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). Although the NMCRA appears inconsistent with the Agreement, Defendant State has not shown that the statute is a "substantial impairment to a vested contractual right." *Energy Reserves Grp.*, 459 U.S. at 411. It appears the State wants to have its cake and eat it too. *See Lauchli v. United States*, 405 U.S. 965, 968 (1972) (Douglas, J., dissenting from denial of certiorari) (expressing misgiving about allowing the Government to "have its cake and eat it too"). The State passed the NMCRA—well aware of its breadth. Yet, here, Defendant State seeks protection from liability under the Agreement that the very purpose of the NMCRA sought to eliminate.

"Legislatures must balance competing interests before passing any statute," and it is not this Court's function to "second guess the resulting choice." *In re Walker*, 959 F.2d 894, 899 (10th Cir. 1992). Affording appropriate deference to the policy choice of the New Mexico legislature dictates this Court determine no reason exists to declare the application of the NMCRA to the Agreement an unconstitutional impairment of contract. The Contracts Clause does not require courts "to sit as superlegislatures" weighing "the multitude of alternatives." *Balt. Tchrs. Union v. Mayor of Balt.*, 6 F.3d 1012, 1021–22 (4th Cir. 1993).

## CONCLUSION

Defendants' Motion for Partial Summary Judgment (**Doc. 30**) is **DENIED** for the reasons stated in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE